DAVID F. FAUSTMAN, State Bar No. 081862
TYREEN G. TORNER, State Bar No. 249980
FOX ROTHSCHILD LLP
235 Pine Street, Suite 1500
San Francisco, CA 94104-2734
Telephone:     415.364.5540
Facsimile:      415.391.4436
Email:          dfaustman@foxrothschild.com
                ttorner@foxrothschild.com

Attorneys for Defendant
INTERMETRO INDUSTRIES CORPORATION

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIM LOCKHART, | Case No.: _____ |
| Plaintiff, | **DEFENDANT INTERMETRO INDUSTRIES CORPORATION'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1332 (DIVERSITY), AND DECLARATION OF TYREEN G. TORNER IN SUPPORT OF REMOVAL** |
| vs. | |
| INTERMETRO INDUSTRIES CORPORATION and DOES 1 through 5, inclusive, | |
| Defendant. | Complaint Filed:      June 24, 2013 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT**:

PLEASE TAKE NOTICE that Defendant InterMetro Industries Corporation ("InterMetro" or "Defendant") removes to this Court the state court action described below, based on the Court's removal jurisdiction under 28 U.S.C. § 1441, and the Court's diversity jurisdiction under 28 U.S.C. § 1332(a).

**I.      PLEADINGS AND PROCEEDINGS TO DATE**

On June 24, 2013, Plaintiff Jim Lockhart ("Plaintiff") commenced an action in the Superior Court of California, County of Yolo, entitled *Jim Lockhart v. Intermetro Industries Corporation and Does 1 through 5, inclusive*, as Case No. CV13-1117 ("State Action").  InterMetro first received a copy of the Complaint on July 1, 2013, when a copy of the Summons and Complaint was personally

1    served on InterMetro's agent for service of process, along with the Civil Case Cover Sheet, Notice of

2    Case Management Conference and Related Orders, and the Case Management and the Civil ADP

3    Program Packet.  True and correct copies of these documents are attached to the attached

4    Declaration of Tyreen G. Torner ("Torner Decl.") as **Exhibit 1**.  A true and correct copy of

5    InterMetro's Answer filed in the state court action is attached to the Torner Declaration as **Exhibit 2**.

6    **Exhibits 1** and **2** comprise all process, pleadings and orders filed and served in the State Action.

7         This Notice of Removal is timely in that it has been filed and served within 30 days of the

8    service of Plaintiff's summons and Complaint on the Defendant.  *Murphy Bros., Inc. v. Mitchetti*

9    *Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (defendant's period for removal will be no less than

10   30 days from service).

11   **II.    SUBJECT MATTER JURISDICTION**

12        This action is a civil action over which this Court has original jurisdiction under 28 U.S.C.

13   section 1332 and is one which may be removed to this Court by Defendant pursuant to the

14   provisions of 28 U.S.C. § 1441 because it is a civil action between citizens of different states and the

15   matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

16        **A.    Diversity of Citizenship Exists Between The Parties**

17        Plaintiff admits he resides in Yolo County in the State of California.  (See Complaint, ¶ 1.)

18   According to InterMetro's personnel records, Plaintiff resided in California throughout his

19   employment with InterMetro (September 30, 2005 to October 12, 2012).  His last known address

20   was in West Sacramento, California.  (*See* Declaration of Darrin Woodruff ("Woodruff Decl.") at ¶

21   2.)  Therefore, for purposes of removal, Plaintiff is a California citizen.

22        InterMetro was, at the time of the filing of this action, and still is, a corporation incorporated

23   under the laws of the State of Delaware, having its "nerve center" and principal place of business at

24   its headquarters in Wilkes-Barre, Pennsylvania.  (Woodruff Decl. at ¶ 3.)  *Hertz Corp. v. Friend*, 175

25   L. Ed. 2d 1029, 1041 (2010) ("The 'principal place of business' is best read as referring to the place

26   where a corporation's officers direct, control, and coordinate the corporation's activities. . . . in

27   practice it should normally be the place where the corporation maintains its headquarters.  It is the

28   place that Courts of Appeals have called the corporation's 'nerve center.'").  InterMetro's corporate

DEFENDANT'S NOTICE OF REMOVAL
ACTIVE 21882703v1 07/29/2013 1:10 PM

Case No.:

1   officers work at the company's headquarters in Wilkes-Barre, Pennsylvania. From Pennsylvania,

2   the company's officers direct, control, and coordinate the activities of InterMetro. (Woodruff Decl.

3   at ¶ 3.)

4          Further, InterMetro believes and on that basis alleges that none of the fictitiously-named

5   defendants (DOES 1 – 5) have been identified by Plaintiff or served with the Summons and

6   Complaint. 28 USC § 1441(a); *Newcombe v. Adolf Coors Company*, 157 F.3d 686, 690-691 (9th

7   Cir. 1998). Where the Court has "no information as to who [fictitiously-named defendants] are or

8   where they live or their relationship to the action," it is proper to disregard Doe defendants upon

9   removal. *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987); *see also Fristoe v.*

10  *Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) ("[U]nknown defendants sued as 'Does'

11  need not be joined in a removal petition.").

12         Because Plaintiff is a citizen of California, and InterMetro is a citizen of both Delaware and

13  Pennsylvania, there is complete diversity of citizenship.

14         **B.**     **The Jurisdictional Minimum Has Been Established.**

15         Where, as here, the Complaint does not demand a specific dollar amount, the removing

16  defendant bears the burden of proving by a preponderance of evidence that the amount in

17  controversy exceeds $75,000. *See Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). In

18  making this assessment, the court may consider the facts in the removal petition including summary-

19  judgment-type evidence relevant to the amount in controversy at the time of removal. *Id.* In

20  measuring the amount in controversy, a court must assume that any admissions in the Complaint are

21  true and that a jury will render a verdict for plaintiff on all claims. *See Korn v. Polo Ralph Lauren*

22  *Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008). The amount in controversy includes all

23  damages claims, as well as "punitive damages when they are recoverable as a matter of law."

24  *Simmons v. PCR Technology*, 209 F. Supp. 2d 1029, 1033 (N.D. 2002); *Richmond v. Allstate*

25  *Insurance Company*, 897 F. Supp. 447 (S.D. Cal. 1995); *Miller v. Michigan Millers Ins. Company*,

26  1997 WL 136242 (N.D. Cal. 1997). The allegations in the Complaint show that the amount in

27  ///

28  ///

3

DEFENDANT'S NOTICE OF REMOVAL
ACTIVE 21882703v1 07/29/2013 1:10 PM

Case No.:

1   controversy exceeds $75,000.[1]

2       The amount in controversy analysis was examined in *James v. Childtime Childcare, Inc.*, S-

3   06-2676 DFL DAD, 2007 WL 1589543 (E.D. Cal. June 1, 2007), which is an analogous single-

4   plaintiff employment case.  There, the plaintiff was terminated on July 19, 2006, and her subsequent

5   complaint was removed on November 22, 2006.  *Id.*  During this 126-day period, the plaintiff lost

6   wages in the amount of $12,700.  In addition to this accrued loss, the Court considered her prayer for

7   lost wages following removal, emotional distress, and attorneys' fees.  *Id.*  Under this scenario, the

8   Court concluded that "these damages taken cumulatively likely would exceed $75,000."  *Id.*

9       The result would be the same here.  Plaintiff seeks compensatory damages, special damages,

10  punitive damages, interest, reasonable costs, attorneys' fees, punitive damages, and other relief as

11  the Court deems just and proper.  (Complaint, p. 7.)

12      Plaintiff resigned from his employment with Defendant on or around October 12, 2012.

13  (Complaint, ¶ 12.)  At the time of separation, Plaintiff earned an annual salary of $74,957.78 plus

14  commissions and bonuses.  (Woodruff Decl. at ¶ 3.)  In 2011, the last full year Plaintiff worked,

15  Plaintiff earned $72,774.52 in salary, and $109,018.50 in commissions and bonuses.  (*Id.*)  From

16  January 1, 2012 to October 12, 2012, the date of his separation, Plaintiff earned $67,708.49 in salary,

17  and $50,944.21 in commissions and bonuses.  (*Id.*)  Thus, in 2012, Plaintiff earned $118,652.70 in

18  total, despite working less than ten months (approximately 41 weeks) out of the year.  This equates

19  to approximately $2,893.97[2] in earnings per week in 2012, or approximately $578.79[3] per workday

20  based on a five-day workweek.

21      In his first cause of action, Plaintiff alleges that he is entitled to unpaid commissions.  In his

22

---

[1]  Defendant disputes that it has any actual liability to Plaintiff whatsoever.  Nonetheless, for the limited purpose of determining removal jurisdiction, "the ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." *Korn*, 536 F.Supp.2d at 1205 (emphasis in original).  Therefore, although Defendant believes it "actually owes" Plaintiff nothing, and that Plaintiff has suffered no damages, it is clear that Plaintiff has put "in controversy" more than the jurisdictional minimum.

[2]  Average weekly earnings calculated as follows:  $118,652.70 (total earnings from January 1, 2012 to October 12, 2012, the date of his separation) / 41 (number of workweeks Plaintiff worked in 2012) = $2,893.97 average earned per workweek.

[3]  Average daily rate calculated as follows:  $2,893.97 (average weekly earnings in 2012) / 5 (number of workdays per workweek) = $578.79 average earned per workday.

4

May 9, 2013 settlement demand letter, Plaintiff claimed he "is owed commissions of approximately $47,000." (Woodruff Decl., ¶ 5, Exh. A at p. 4, ¶ 3.)[4]

In his second cause of action, Plaintiff alleges he is entitled to waiting-time penalties pursuant to Labor Code § 203, calculated at the employee's daily rate for each day wages are unpaid following discharge, up to 30 days. (Complaint, ¶ 24.) Based on his annual earnings, Plaintiff's daily wage is estimated at approximately $578.79. According to Plaintiff's May 2013 demand letter, as of May 2013, six months after the date of separation, Plaintiff allegedly still had not been paid all commissions due to him. (Woodruff Decl., ¶ 5, Exh. A.) Therefore, the maximum 30 days of waiting time penalties are at issue. This amounts to an estimated $17,363.70 in waiting time penalties.[5] Together with his alleged unpaid commissions of $47,000, the amount of alleged unpaid wages and penalties is approximately $64,363.70.[6]

In his third cause of action, Plaintiff alleges that he is entitled to damages for breach of the covenant of good faith and fair dealing. (Complaint, ¶¶ 26-28.) As a result, Plaintiff alleges that he is entitled to lost wages and benefits. (Complaint, ¶ 28.) As of the date the Complaint was filed, June 24, 2013, 42 weeks had passed since Plaintiff's employment had terminated. Assuming his wage loss continued to accrue at the same rate, his wage loss as of the date the Complaint was filed was $121,546.74.[7] This far exceeds the plaintiff's wage loss at the time of removal in *James* (which was deemed to support removal) and will presumably continue to accrue.

Plaintiff also seeks punitive damages. "It is well established that punitive damages are part

---

[4]  In assessing the amount in controversy, a plaintiff's settlement demand is relevant. *E.g.*, *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002). Indeed, in the Ninth Circuit, such evidence may by itself be sufficient to establish the jurisdictional minimum. *Id.* As of May 9, 2013, Plaintiff offered to resolve all of his claims against Defendant for the sum of $67,500. (Woodruff Decl., Exh. A, p. 5.)

[5]  Waiting time penalties calculated as follows: $578.79 (average daily rate) x 30 (maximum 30 days penalties) = $17,363.70.

[6]  Alleged unpaid commissions and waiting-time penalties at issue calculated as follows: $47,000 (commissions payments owed per demand letter) + $17,363.70 (estimated waiting time penalties) = $64,363.70.

[7]  Estimated wage loss from time of separation through date Complaint filed calculated as follows: $2,893.97 (average weekly pay based on 2012 earnings) x 42 weeks (number of weeks between separation of employment on October 12, 2012, through date Complaint filed on June 24, 2013) = $121,546.74.

DEFENDANT'S NOTICE OF REMOVAL                                    Case No.:
ACTIVE 21882703v1 07/29/2013 1:10 PM

of the amount in controversy in a civil action." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001). Defendant can establish probable punitive damages by introducing evidence of jury verdicts in cases involving similar facts. *Simmons*, 209 F. Supp. 2d at 1033 ("jury verdicts in these cases amply demonstrate the potential for large punitive damage awards in employment discrimination cases"). In cases like this, such awards can be substantial. For example, in *Melendez v. HMS Host Family Restaurants, Inc.*, No. CV 11-3842 ODW, 2011 WL 3760058 (C.D. Cal. Aug. 24, 2011), the plaintiff sued her employer, alleging claims for discrimination and retaliation. The employer removed the case to federal court, and the plaintiff moved to remand. The District Court denied the motion, finding **"the fees and a punitive damages award of at least $28,000.00, combined with approximately $47,424.00 in lost wages, will more likely than not exceed the jurisdictional minimum."** *Id.* at *4 (emphasis added).

Plaintiff's claim for emotional distress damages should also be considered in determining the amount in controversy. *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995). Relying on *Espinoza v. County of Orange*, No. 30200800110643, 2009 WL 6323832, at *1 (Cal. Super. Ct. Oct. 8, 2009), the Court in *Vasquez* noted that an Orange County jury had awarded a disability discrimination plaintiff $500,000 in emotional distress damages, proving that emotional distress damage awards in employment cases can also be substantial.

There are numerous other jury verdicts which reflect the potential for large jury awards in California for causes of action similar to the ones alleged in Plaintiff's Complaint. *See, e.g.*, *Gurpreet Singh v. Southland Stone U.S.A. Inc., et al.*, Los Angeles Superior Court Case Number BC350196 (April 16, 2008) (jury verdict of $992,650, including $45,000 for breach of implied covenant of good faith and fair dealing, and $350,000 in punitive damages) (*see* Torner Decl., Exh. 3); *Mark Van Holt v. City of South Gate*, Los Angeles Superior Court Case Number BC309741 (March 27, 2006) (jury verdict of $3,647,400 for wrongful discharge, retaliation, violation of the Peace Officers Procedure Bill of Rights, breach of contract, breach of implied covenant of good faith and fair dealing) (*see* Torner Decl., Exh. 4); *Perry Crouch v. Shields for Families Project, Inc., et al.*, Los Angeles Superior Court Case Number TC011582 (June 9, 2000) (jury verdict of $100,000 in economic damages and $50,000 in noneconomic damages for wrongful termination in violation of

DEFENDANT'S NOTICE OF REMOVAL
ACTIVE 21882703v1 07/29/2013 1:10 PM                                    Case No.:

1  public policy; $150,000 in noneconomic damages for breach of the implied covenant of good faith

2  and fair dealing; $175,000 in punitive damages) (*see* Torner Decl., Exh. 5).

3       Given that the alleged wage losses and owed penalties amount of approximately

4  $185,910.44[8] as of the date of removal, a prayer for emotional distress damages (which themselves

5  can be in the tens or hundreds of thousands of dollars), a prayer for punitive damages (which can be

6  just as substantial), and a request for attorneys' fees (which can exceed the compensatory damages),

7  Defendant satisfies the amount in controversy requirement here.

8  **III.**   **VENUE**

9       This action is currently pending in the Superior Court of California, County of Yolo, and

10  therefore venue in this Court is proper pursuant to 28 U.S.C. § 84(b) and 28 U.S.C. § 1391(a).

11  **IV.**   **NOTIFICATIONS**

12       As required by 28 U.S.C. § 1446(d), Defendant will provide prompt written notice to

13  Plaintiff, through his counsel, of removal of this action to federal court.  As required by 28 U.S.C. §

14  1446(d), Defendant will file a copy of this Notice of Removal with the Clerk of the Superior Court

15  of the State of California, County of Yolo.

16       WHEREFORE, Defendant InterMetro Industries Corporation hereby removes this action

17  from the State Court to the United States District Court for the Eastern District of California.

18

19  Dated:   July 29, 2013                              FOX ROTHSCHILD LLP

20

21

22  By: _____

23         DAVID F. FAUSTMAN
          TYREEN G. TORNER

23         Attorneys for Defendant

24         INTERMETRO INDUSTRIES CORPORATION

25

26

---

27  [8] Alleged wage loss and penalties owed as of time of removal calculated as follows:  $64,363.70

28  (estimated unpaid commissions and waiting-time penalties) + $121,546.74 (estimated wage loss from time of separation through date Complaint filed) = $185,910.44.

7

**DECLARATION OF TYREEN G. TORNER**

I, TYREEN G. TORNER, declare:

1. I am an attorney I am an attorney licensed to practice law in the State of California. I am an Associate with the law firm of Fox Rothschild LLP, attorneys of record for Defendant InterMetro Industries Corporation herein. I make this declaration in support of Defendant's Notice of Removal. I have personal knowledge of the facts below, or have gained such knowledge through my research and review of the files in this case. If called to testify to the following, I could and would competently do so.

2. Attached hereto as **Exhibit 1** are true and correct copies of the following documents served on Defendant on July 1, 2013 in the action, *Jim Lockhart v. Intermetro Industries Corporation and Does 1 through 5, inclusive*, Superior Court of California, County of Yolo, Case No. CV13-1117 ("State Action"): Summons, Complaint, Civil Case Cover Sheet, Notice of Case Management Conference and Related Orders, and the Case Management and the Civil ADP Program.

3. Attached hereto as **Exhibit 2** is a true and correct copy of Defendant's Answer in the State Action, filed in the Superior Court of California, County of Yolo, on July 29, 2013.

4. Attached hereto as **Exhibit 3** is a true and correct copy of the LexisNexis Jury Verdicts and Settlements Report for *Gupreet Singh v. Southland Stone U.S.A. Inc., et al.*, Los Angeles Superior Court, Case Number BC350196.

5. Attached hereto as **Exhibit 4** is a true and correct copy of the LexisNexis Jury Verdicts and Settlements Report for *Mark Van Holt v. City of South Gate*, Los Angeles Superior Court, Case Number BC309741.

///

///

///

///

///

///

6.      Attached hereto as **Exhibit 5** is a true and correct copy of the LexisNexis Jury Verdicts and Settlements Report for *Perry Crouch v. Shields for Families Project, Inc., et al.*, Los Angeles Superior Court, Case Number TC011582.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

Executed this 29th day of July 2013, in San Francisco, California.

By: _____

TYREEN G. TORNER

DEFENDANT'S NOTICE OF REMOVAL
ACTIVE 21882703v1 07/29/2013 1:10 PM

Case No.:

EXHIBIT 1

EXHIBIT 1

EXHIBIT 1

EXHIBIT 1

JUL 01 2013  9:55

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
INTERMETRO INDUSTRIES CORPORATION, and DOES 1 through
5, inclusive.

FILED
MAY 24 13

**D. KRAUSE**

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JIM LOCKHART

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
THE SUPERIOR COURT OF CALIFORNIA, IN AND FOR THE COUNTY OF YOLO
725 Court Street
Woodland, CA 95695

CASE NUMBER: *(Número del Caso):*
CV13-1117

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Sheri L. Leonard (173544)              Tele: (916) 787-4544
HENK LEONARD, A Professional Law Corporation
2260 Douglas Blvd., Suite 200, Roseville, CA 95661

| DATE:<br>*(Fecha)* JUN 2 4 2013 | SHAWN C. LANDRY | Clerk, by<br>*(Secretario)* D. KRAUSE | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* INTERMETRO INDUSTRIES CORPORATION
   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]
ESSENTIAL FORMS

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

ROBERT P. HENK    (147490)
SHERI L. LEONARD (173544)
**HENKLEONARD**
**A Professional Law Corporation**
2260 Douglas Blvd., Suite 200
Roseville, CA 95661
Telephone:    (916) 787-4544
Fax:            (916) 787-4530

D. KRAUSE

Attorneys for Plaintiff
**JIM LOCKHART**

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF YOLO

| | |
|---|---|
| **JIM LOCKHART** | CASE NO.: CV13-1117 |
| Plaintiff, | **PLAINTIFF'S COMPLAINT FOR DAMAGES FOR:** |
| vs. | |
| **INTERMETRO INDUSTRIES CORPORATION** and DOES 1 through 5, inclusive, | 1. **BREACH OF CALIFORNIA LABOR CODE:  FAILURE TO PAY WAGES OWED FOR SERVICES RENDERED;** |
| Defendant. | 2. **BREACH OF CALIFORNIA LABOR CODE:  FAILURE TO PAY WAGES OWED UPON TERMINATION OF EMPLOYMENT; AND,** |
| | 3. **BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING.** |

COMES NOW, Plaintiff, JIM LOCKHART, individually, alleging Defendant,
**INTERMETRO INDUSTRIES CORPORATION** as follows:

### GENERAL ALLEGATIONS

1.    Plaintiff **JIM LOCKHART**, is an individual, and a resident of Yolo County,
State of California.

2.    Plaintiff is informed, believes, and thereon alleges that Defendant
**INTERMETRO INDUSTRIES CORPORATION** is, and at all times mentioned herein was, a
business entity, form unknown, yet operating in the County of Yolo, State of California.

Plaintiff's Complaint For Damages

1

3.     Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 5, inclusive, and therefore sues said Defendants by such fictitious names. Plaintiff is informed, believes, and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff' damages, as herein alleged, were proximately caused by their conduct. Plaintiff will amend this Complaint to allege the true names and capacities of said defendants when they are ascertained.

4.     Plaintiff is informed, believes, and thereon alleges that at all times mentioned herein, each Defendant may have been an agent, servant and/or employee each of the remaining Defendants and may have acted pursuant to a common plan, that each Defendant may have authorized, negligently supervised and/or ratified each act of each remaining Defendant, and that each Defendant may be the alter ego of each of the remaining Defendants. Plaintiff is informed, believes, and thereon alleges that Defendants, and each of them, were and are responsible for the acts causing Plaintiff damages as hereinafter alleged.

5.     Plaintiff began working for Flo Healthcare in September 2005 as a Regional Sales Manager in the Western Region. A major component of Plaintiff's job was to identify and work with Value Added Resellers (VARs). A VAR is an invaluable asset to an organization as it makes an existing product even more sellable. By identifying and working with VARs, Plaintiff was able to help grow his employer's business.

6.     In March 2006, Flo Healthcare was acquired by Emerson Electric. Then, on or about September 2009, the company was consolidated into Defendant's organization. Defendant identifies itself as being the world's leading manufacturer of storage and transport equipment in Healthcare, Foodservice and Commercial markets for over eighty years. Plaintiff's contacts with several healthcare facilities and many VARs made him a very valuable asset to Defendant. Although there were organizational changes throughout his employment, at all times Plaintiff's job duties remained the same.

7.     Plaintiff's primary responsibility during his employment with Defendant was to work with VARs to sell workstation solutions for the healthcare portion of the organization. For the majority of his employment, Plaintiff would earn commissions based on the sale of Defendant's healthcare products in the Western region. Plaintiff's typical duties would include

Plaintiff's Complaint For Damages

2

1   setting up demonstrations with end-user hospitals, as well as working with the VAR to ensure
2   that their sales strategy was sound. Plaintiff would also collaborate with the VAR to address any
3   product concerns that the health care facility may have had regarding purchase of the product.
4          8.      Following Plaintiff's efforts, once a hospital selected Defendant as vendor-of-
5   choice for the needed product, he would earn commissions on all orders placed by that facility
6   for Defendant's product. Although the hospitals would continuously place orders for the product
7   on an "as needed" basis via the VAR, Plaintiff would not have job duties to perform for those
8   transactions as the customer had already selected Defendant as their standard solution.
9   Basically, Plaintiff's responsibility was to sell products to hospitals, the VAR was responsible to
10  handle the transactions, and Defendant was required to ship the product.
11         9.      Even though Plaintiff would not receive his commissions until the product
12  shipped, it is clear that his commissions were earned prior to that event based on his job duties
13  and responsibilities for Defendant. At no time during his employment with Defendant, did
14  Plaintiff have any commission plan document that differed than the above in terms of
15  determining when his commission was earned.
16         10.     In October 2011, Plaintiff was told that his territory was being split and that he
17  would be losing Southern California, Arizona, New Mexico, Colorado, Wyoming, and Utah.
18  Plaintiff was told that he would retain Northern California, Oregon, Nevada (except Las Vegas),
19  Washington and Alaska. Plaintiff was also later told by Wes Craddock, Regional Sales Manager
20  (and Plaintiff's direct boss), that the change would occur in early 2012 and that Plaintiff was
21  expected to continue to work all areas until that time. The territory was ultimately split in
22  February 2012.
23         11.     Plaintiff had several long established accounts and he was concerned that all of
24  his considerable efforts to get vendor-of-choice with those organizations would ultimately not be
25  fully compensated. Of course, Plaintiff also had significant rapport with various VARs in the
26  Southern California territory, including but not limited to Siemens, Tangent, and ePlus.
27  Therefore, Mr. Craddock told Plaintiff to give him lists of protected accounts for which Plaintiff
28  would be paid and credited for future purchases. Mr. Craddock specifically told Plaintiff that he
29  would make sure that Plaintiff was "taken care of" and "that he would not jam him." The

Plaintiff's Complaint For Damages

1   agreed-upon protected accounts in the transitioned territory were Pioneers, UNM, UNM

2   Sandoval, Cedars Sinai, and later Hawaii Health.

3       12.     Plaintiff's last day with Defendant was October 12, 2012 when he elected to leave

4   his employment.  Even though he gave sufficient advance notice, Plaintiff had to fight to even

5   get his vacation pay and expenses owed from Defendant.  Since Plaintiff gave Defendant at least

6   72 hours prior notice that he was quitting, Defendant was obligated to pay him all of his unpaid

7   wages at the time of quitting.   Although Plaintiff was ultimately paid his vacation and expenses

8   due, to date he has not received his owed commissions.

9       13.     On or about November 16, 2012, Plaintiff sent Mr. Darrin Woodruff, Vice

10  President, Human Resources, a letter outlining that he was owed commissions from orders

11  placed by University of New Mexico, Sandoval, Pioneers, Cedars Sinai, and Hawaii Health and

12  Hospitals Corporation and other listed accounts.  No substantive response to this letter was ever

13  received.  In fact, Plaintiff has never received any explanation regarding Defendant's basis for

14  refusing to pay him commissions owed for orders that had been placed during his employment.

15      14.     Plaintiff did initially receive an email response from Mr. Woodruff dated

16  December 4, 2012 that said "I have asked for all commissions paid to you in FY12 any all (sic)

17  those in October." Then, on December 10, 2012, Plaintiff received an email from Mr. Woodruff

18  that stated, "Yes, I received all of the commissions you were paid by line item.  I am currently

19  reconciling those against your actual commission statements.  I will have you an answer this

20  week for sure."

21      15.     In January Mr. Woodruff spoke with Plaintiff and told him that he would be paid

22  on several of the accounts including Pioneer, Sandoval, and UNM.  However Mr. Woodruff also

23  said that Defendant never pays for commissions after somebody leaves and that was Defendant's

24  standard practice.

25      16.     Plaintiff estimates that he is owed commissions on just over $3.25 million in sales

26  to Defendant.  Plaintiff believes that the vast majority of items have now shipped, and he was

27  just not paid.

28

29

Plaintiff's Complaint For Damages

4

17.   Plaintiff is owed for three orders by Pioneers, sixteen orders by Hawaii Health, one by UNM, one by Sandoval, and several orders placed by ePlus for by Cedars Sinai. The aforementioned entities were all on the protected list per the agreement.   All of the aforementioned commissions had been earned through the efforts of Plaintiff as he completed his sales duties and got Defendant to be a vendor of choice.  In each of the orders for which Plaintiff claims commissions, he perfected his right to payment prior to his employment ending.

18.   All other commissions owed were for Community, Sierra Nevada, San Ramon, Northbay, St. John, Palo Alto VA, San Francisco VA, El Camino, Barton Memorial, Hazel Hawkins, Santa Clara, Carson Valley, Madera, and San Mateo, Chinese Hospital, and all were in Mr. Lockhart's assigned territory following the split.   All of the aforementioned commissions had been earned through the efforts of Plaintiff as he completed his sales duties and got Defendant to be a vendor of choice.  In each of the orders for which Plaintiff claims commissions, he perfected his right to payment prior to his employment ending.

## FIRST CAUSE OF ACTION

### Breach of California Labor Code:  Failure to Pay Wages Owed

19.   Plaintiff incorporates by reference, as if fully set forth herein, the provisions of paragraphs 1 through 18 of this Complaint.

20.   Defendant has failed to pay Plaintiff his compensation owed based on his services rendered for Defendant's organization.  Plaintiff has informed Defendant of the compensation owed, and Defendant has continually refused to compensate Plaintiff accurately for service rendered to Defendant.

21.   Plaintiff is entitled to recover from Defendant, pursuant to the California Labor Code, all unpaid compensation.  In addition, Plaintiff is entitled to recover an award for reasonable attorneys' fees to be paid by the Defendant, and the costs of the action.

WHEREFORE, Plaintiff prays for judgment against Defendant as hereinafter set forth.

---

Plaintiff's Complaint For Damages

## SECOND CAUSE OF ACTION

### Failure To Pay Wages Upon Termination Of Employment

22.     Plaintiff incorporates herein, as though fully set forth at length, each and every allegation set forth in paragraphs 1 through 21, inclusive, of this Complaint.

23.     Defendant has breached its statutory duty owed to Plaintiff under § 202 of the California Labor Code by not paying Plaintiff his accrued wages at the termination of his employment. Plaintiff had made a reasonable request for his compensation, and Defendant has willfully refused to pay Plaintiff his wages.

24.     Plaintiff is entitled to damages in accordance with Section 203 of the California Labor Code, all unpaid compensation and an additional amount as a waiting-time penalty. In addition, Plaintiff is entitled to recover an award for reasonable attorneys' fees to be paid by the Defendant, and the costs of the action.

**WHEREFORE**, Plaintiff prays for judgment against Defendant as hereinafter set forth

## THIRD CAUSE OF ACTION

### Breach of Covenant of Good Faith and Fair Dealing

25.     Plaintiff hereby incorporates by reference Paragraphs 1 through 24, inclusive, of this Complaint as if fully set forth herein.

26.     The parties' employment agreement contained an implied covenant of good faith and fair dealing by which Defendant agreed to refrain from doing any act which would prevent or impede Plaintiff from enjoying the fruits of said contract. Said covenant of good faith and fair dealing requires Defendant to fairly, honestly, and reasonably perform the terms and conditions of said agreement.

27.     Said covenant of good faith and fair dealing inheres in every contract and in particular is implied in the terms of Plaintiff's employment agreement with Defendant by reason of, but not limited to, Plaintiff's performance for Defendant.

28.     As a direct, foreseeable, and proximate result of Defendant's breach, Plaintiff suffered and continues to suffer substantial losses in earnings and other employment benefits, all

Plaintiff's Complaint For Damages

6

1   to his damage in an amount in excess of the minimum jurisdiction of this Court, the precise

2   amount of which will be proven at trial.

3       **WHEREFORE**, Plaintiff prays judgment against Defendant as follows:

4       1.      For compensatory damages in an amount to be proven at trial.

5       2.      For special damages in an amount to be proven at trial.

6       3.      For general damages in an amount to be proven at trial.

7       4.      For interest on Plaintiff's compensatory damages at the maximum rate allowed by

8               law.

9       5.      For reasonable costs.

10      6.      For attorney's fees.

11      7.      For jury trial.

12      8.      For punitive damages.

13      9.      For such other and further relief as this Court deems just and proper.

14

15  Dated:  June 19, 2013

16                                          HENK LEONARD
                                            A Professional Law Corporation
17

18                                          SHERI L. LEONARD
                                            Attorney for Plaintiff
19                                          JIM LOCKHART

20

21

22

23

24

25

26

27

28

29

Plaintiff's Complaint For Damages

7

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Sheri L. Leonard (173544)<br>HENK LEONARD, A Professional Law Corporation<br>2260 Douglas Blvd., Suite 200<br>Roseville, CA 95661<br>TELEPHONE NO.: (916) 787-4544   FAX NO.: (916) 787-4530<br>ATTORNEY FOR *(Name)*: JIM LOCKHART | FILED<br>YOLO SUPERIOR<br>Jun 19 2013<br>D. KRAUSE |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **YOLO**
STREET ADDRESS: 725 Court Street
MAILING ADDRESS:
CITY AND ZIP CODE: Woodland, CA 95695
BRANCH NAME:

CASE NAME: Jim Lockhart v. Intermetro Industries Corporation, and Does 1 through 5, inclusive.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: CV13-1117 |
|---|---|---|
| [X] Unlimited  [ ] Limited<br>(Amount   (Amount<br>demanded   demanded is<br>exceeds $25,000)  $25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [X] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action *(specify)*: 3
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 19, 2013

Sheri L. Leonard
(TYPE OR PRINT NAME)                                      (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

---

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | ESSENTIAL FORMS | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF YOLO**<br>**725 COURT STREET**<br>**WOODLAND, CA. 95695**<br>**530-406-6704**<br><br>**JIM LOCKHART**<br>Plaintiff(s):<br><br>vs.<br><br>**INTERMETRO INDUSTRIES CORPORATION**<br>Defendant(s): | **NOTICE OF CASE MANAGEMENT CONFERENCE and RELATED ORDERS (Unlimited Case)** |

| | **Case #: CV-CV-13-0001117** |

**Case Management Conference is set for: _____10/21/13____ @ 8:30 a.m. in Department 15 LOCATED AT 1100 MAIN STREET, WOODLAND, CA.**

This is Notice of your Case Management Conference (CMC). The date, time and department are written above.  This notice contains new policies effective in 2007.

1.  In accordance with applicable statutes, California Rules of Court and Local Rules 12, 13 and Appendices 3 and 4,  you are hereby ordered to:
    (a)  Serve all named defendants and file proofs of service on those defendants with the court within 60 calendar days of filing the complaint (CRC 3.110)
    (b)  Serve a copy of this notice, the Case Management Statement and the ADR information sheet on all named parties in this action.(CRC 3.220-3.222)
    (c)  Comply with CRC 3.110 relating to responsive pleadings, cross complaints and extensions of time and defaults.
    (d)  File and serve a completed Case Management Statement **at least calendar 15 days before the CMC** (CRC 3.725). Failure to do so may result in monetary sanctions.
    (e)  Appear at the CMC in person or by CourtCall. A failure to appear shall result in dismissal or other sanction.
    (f)  Meet and confer in person or by telephone (CRC 3.724) to consider each of the issues identified in CRC 3.725 no later than 30 calendar days before the date set for the Case Management Conference.

2.  When a default judgment is requested the party requesting the entry of default must obtain a judgment against the defaulting party within 60 days after entry of default, unless the court has granted an extension.

3.  **You are further ordered** to appear in person or through your attorney of record at the Case Management Conference noticed above. You must be fully familiar with the case and authorized to proceed with all CMC and ADR matters, including setting a trial date.

NOTICE OF CASE MANAGEMENT                                                                                          1
Unlimited Civil
Rev 03/12

4. **ORDER TO SHOW CAUSE.** If you fail to follow the orders above, you are hereby ordered to show cause why you should not be sanctioned. The Order to Show Cause hearing will be at the same time as the Case Management Conference hearing. Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal. All OSC's require a written response.

5. If a judgment or dismissal is filed with the court prior to the CMC, the CMC will be vacated and counsel/parties need not appear.

6. **Early ADR.** Parties may proceed to an alternative dispute resolution (ADR) process by filing a Stipulation to Continue Case Management Conference to use ADR. (See, ADR Information Sheet and accompanying packet.) In such event, and if the Stipulation is on file 15 days prior to the scheduled CMC, the CMC will be continued for 100 days to allow the parties time to complete their ADR process. The court will notify the parties of their new CMC date.

7. Telephonic appearances at the CMC are permitted and are available by contacting CourtCall, LLC, an independent vendor, at least 5 business days prior to the scheduled conference.

8. The case management judge will issue orders at the conclusion of the conference that may include: (a) referring parties to judicial arbitration or to a voluntary ADR process, including early settlement conference; (b) setting an ADR completion date; (c) establishing a discovery plan; (d) scheduling dates or the exchange of information and discovery with respect to expert witnesses; (e) dismissing or severing claims or parties; (f) setting a trial date, and for such other CMC matters as may be appropriate.

9. The case management judge may be the trial judge in this case.

**This is only a summary of local rules and policies. For further information regarding Case Management and Alternative Dispute Resolution programs, the CourtCall service, all current Local Rules, court policies set forth in the Appendices, and court forms, go to the court website at www.yolo.courts.ca.gov.**

SHAWN C. LANDRY, Court Executive Officer

Dated: 06/24/2013          BY: _____D. KRAUSE_____,

DKRAUSE , Deputy Clerk

NOTICE OF CASE MANAGEMENT                                    2
Unlimited Civil
Rev 03/12

## CASE MANAGEMENT AND THE CIVIL ADR PROGRAM PACKET (2013)

All cases pending a case management conference (CMC) and all new filings in 2013 are subject to the court's CMC and alternative dispute resolution (ADR) procedures.  See, Local Rules 12 and 13 and Appendices 3 and 4.  Litigants and their counsel should review and be familiar with that material that is now on the court's website:  **www.yolo.courts.ca.gov**.

This packet contains:

1. The Case Management Conference policies
2. The ADR Information Sheet for the Yolo County Superior Court
3. An Order to Continue Case Management Conference and Stipulation to Attend ADR form

This and other information and local forms are available on the court's website: www.yolo.courts.ca.gov.

*NOTE:  This complete packet must be served on the opposing party(ies) together with the complaint (CRC 3.221)*

Clerk of the Court

Yolo County Superior Court

725 Court Street, Room 103

Woodland, CA 95695

530- 406-6704

# ALTERNATIVE DISPUTE RESOLUTION (ADR)

## Information Sheet

*The court requires that all counsel provide a copy of this Information Sheet to their clients. On our website (www.yolo.courts.ca.gov) you can learn more about ADR and the litigation process by going to the ADR link in the banner on the website's home page. There you will find additional links to important information and forms related to alternative dispute resolution (ADR) and case management that can be copied or downloaded for your use.*

Recognizing that many civil disputes can be resolved without the time and expense of traditional civil litigation, the Yolo County Superior Court strongly encourages parties in civil cases to explore and pursue the use of ADR.

### What is Alternative Dispute Resolution?

Alternative Dispute Resolution (ADR) is the general term applied to a wide variety of dispute resolution processes which are alternatives to lawsuits. Types of ADR processes include arbitration, mediation, neutral evaluation, mini-trials, settlement conferences, private judging, negotiation, and hybrids of these processes. All ADR processes offer a partial or complete alternative to traditional court litigation for resolving disputes.

### What are the advantages of using ADR?

ADR, particularly mediation, can have a number of advantages over traditional court litigation.

- **ADR can save time.** Even in a complex case, a dispute can be resolved through ADR in a matter of months or weeks, while a lawsuit can take years.
- **ADR can save money.** By producing earlier settlements, ADR can save parties and courts money that might otherwise be spent on litigation costs (attorneys fees and court expenses.)
- **ADR provides more participation.** Parties have more opportunity with ADR to express their own interests and concerns, while litigation focuses exclusively on the parties' legal rights and responsibilities.
- **ADR provides more control and flexibility.** Parties can choose the ADR process most appropriate for their particular situation and that will best serve their particular needs.
- **ADR can reduce stress and provide greater satisfaction.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere found in litigation. Surveys of disputants who have gone through ADR have found that satisfaction with ADR is generally high, especially among those with extensive ADR experience.

## Arbitration and Mediation

The Yolo County Superior Court currently offers pre-screened panelists with experience and training in each of the following areas.

1. **Arbitration.** An arbitrator hears evidence presented by the parties, makes legal rulings, determines facts and makes an arbitration award. Arbitration awards may be entered as judgments in accordance with the agreement of the parties or, where there is no agreement, in accordance with California statutes. Arbitrations can be binding or non-binding, as agreed by the parties in writing.

2. **Mediation.** Mediation is a voluntary, informal, confidential process in which the mediator, a neutral third party, facilitates settlement negotiations. The mediator improves communication by and among the parties, helps parties clarify facts, identify legal issues, explore options and arrive at a mutually acceptable resolution of the dispute.

3. **Judicial Arbitration.** Some cases will be ordered to Judicial Arbitration if they come within the provisions of Code of Civil Procedure section 1141.11, California Rules of Court, 3.811 and 3.812, and Local Rule 13.

Litigants are encouraged to use an ADR process as early in the case as circumstances permit. All appropriate cases will be reviewed for referral to ADR at the Case Management Conference.

## ADR Procedures for the Yolo County Superior Court

1. Upon filing a Complaint, the Plaintiff will receive this information sheet from the Superior Court Clerk. **Plaintiff is required to include the ADR Information Sheet when he or she serves the Complaint on the Defendant.**

2. All parties to the dispute may voluntarily agree to take the matter to an ADR process. Stipulation Forms for this procedure are provided on-line at the court's website. (At the website, click on the "ADR" link and then on "Forms".) Parties choose and contact their own ADR provider. A list of providers is available on-line at the Panelist link.

3. An initial Case Management Conference ("CMC") will normally be scheduled within 120 days of the filing of the Complaint. An original and copy must be completed and provided to the court clerk no later than 15 days prior to the scheduled conference. The CMC is governed by Local Rule 12 and the policies in Appendix 3, with which all parties are expected to comply.

4. The Yolo County Superior Court Case Management Judge will strongly encourage all parties and their counsel to consider and utilize an ADR process that is appropriate to the case.

5. If the parties voluntarily agree to ADR at the CMC, the parties will be required to sign and file the Form Stipulation and Order to ADR.

6. At the CMC the court will review all scheduled cases for their suitability for referral to ADR.

7. Attendance in person or by CourtCall at the CMC is mandatory.

8. **The fees for ADR are the responsibility of the parties.**

| Superior Court of California, County of Yolo<br>725 Court Street<br>Woodland, Ca. 95695<br>530-406-6704 | For Court Use Only |
|---|---|
| Plaintiff: _____<br><br>Vs.<br><br>Defendant: _____ | |
| | Case No: |

## STIPULATION AND ORDER TO USE ALTERNATIVE DISPUTE RESOLUTION

The parties and their attorneys stipulate that the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process:

☐ Judicial Arbitration (Local Rule 13) (RMA)      ☐ Mediation (RME)
☐ Mediation in lieu of                                          ☐ Private Arbitration (RFA)
   previously ordered Arbitration (RME)                 ☐ binding ☐ non-binding

☐ The $150 Judicial Arbitration Referral Fee shall be paid within 15 days ☐ equally by the parties, or by the ☐ Pltf ☐ Dft

☐ Neutral selected: _____ or
☐ Pltf ☐ Dft shall notify the Court in writing within 15 days of the name of their neutral
☐ Discovery to remain open 30 days prior to trial, if not otherwise ordered.
☐ Other stipulations: _____

Date: _____          Date: _____

_____          _____
Attorney and/or Plaintiff                            Attorney and/or Defendant

_____          _____
Attorney and/or Plaintiff                            Attorney and/or Defendant
                          Attach additional sheets if needed.

### ORDER

The Court orders the parties to use the alternative dispute resolution process stipulated to above. The parties shall comply with Local Rule 13 (Judicial Arbitration), Appendix 3 (Case Management, Policy Orders 7 and 8) and Appendix 4 (ADR Policy) applicable to the ADR process in this matter. ADR shall be completed in the time specified in the Policies or as ordered by the Court. MEDIATION: The parties shall complete and file the Attorney and Client Evaluations forms (see website) within 10 days after it is concluded.  It is also ordered: _____

_____
                          Yolo County Superior Court

Dated: _____          By: _____
                                                        ADR Administrator

Stip & Order to ADR
3-07 (SAA)

## CASE MANAGEMENT CONFERENCE POLICIES

*Introductory note. Case management procedures and the case management conference (CMC) are used by the court to expedite the movement of most civil cases through to an early resolution or trial. Counsel are expected to be thoroughly familiar with Local Rules 12 and 13 and the court's policies set out in Appendices 3 and 4 to the rules.*

**CMC Policies.**

A case management conference (CMC) will be set by the clerk at the time the complaint is filed, ordinarily 120 days after the filing. All cases, limited and unlimited, are required to participate in a CMC. *Limited collection cases (a new designation) have a specially designed management program described in the Notice of Case Management Conference provided by the Clerk at the time the case is filed.* (Uninsured motorist cases are governed by Local Rule 12.3 and are not discusses here.)

The Case Management Statement must be **filed 15 days prior** to the scheduled CMC and should fully address all of the issues set forth in the <u>Judicial Council form CM 110</u>. Timely and complete Statements will facilitate the CMC and benefits the parties, counsel and the court. <u>A failure to file a CMC Statement, or late filing, inconveniences the court and will subject the party to the Order to Show Cause included in the Notice of Case Management Conference and will be heard at the same time.</u>

In appropriate cases and for the convenience of the court and the parties, the court may issue a CMC Order Without Appearance. (CRC 3.722(d).)

Attendance at the CMC is required, personally or telephonically. See, <u>Using CourtCall</u> (on the court's website) to appear by phone. A trial date may be set at the first CMC. Trial counsel and back up trial counsel must be specified at the CMC. (If such counsel is not identified, relief from the scheduled trial date may not be based on the ground that counsel is engaged elsewhere.)

Every case management statement will be reviewed by the CMC judge prior to the initial CMC for referral to an appropriate form of ADR. The parties are encouraged to elect a form of alternative dispute resolution (ADR) prior to the CMC. <u>(Please see the programs described in the Alternative Dispute Resolution</u> link on the court's website for more information.)

The CMC judge will deem the case at-issue at the time of the CMC absent a showing of contrary circumstances.

At the CMC, you may expect the CMC judge to make appropriate pre-trial orders on any of the following matters (CRC 3.715.):

- An order identifying the case as one which may be amenable to early settlement or other alternative disposition technique;

ADR Info Sheet
Rev. 03-2007

- An order referring the case to arbitration, mediation or other dispute resolution process, or a referral to the ADR Administrator for mandatory dispute resolution education.

- An order assigning a trial date. (Counsel are required to be prepared to select a trial date at the CMC.)

- An order transferring the case to the limited jurisdiction of the Superior Court;

- An order identifying the case as one which may be protracted and determining what special administrative and judicial attention may be appropriate, including special assignment, appointment of referee or special master, and the like;

- An order of discovery; including but not limited to establishing a discovery plan or schedule, assignment to a discovery referee, and/or establishing a discovery cut-off date;

- An order scheduling the exchange of expert witness information;

- An order scheduling a subsequent CMC; and

- Such other orders to achieve the interests of justice and the timely disposition of the case.

Orders to ADR are intended to implement the ADR process which began with the filing of the complaint. When cases are filed, counsel are advised of the ADR processes in educational/procedural materials delivered by the court clerk. These must also be served on the defendant. The goal is to move as many cases to judicial arbitration or voluntary ADR as possible prior to or at the CMC and to have the cases resolved within the requirements of the Trial Delay Reduction Act, Government Code section 68607 and CRC 3.714(b). (See, Alternative Dispute Resolution on the court's website.)

**POLICIES IN APPENDICES 3 AND 4 TO THE CURRENT RULES 12 and 13 MAY BE REVISED FROM TIME TO TIME. PLEASE CHECK THE COURT'S WEBSITE FREQUENTLY FOR ADVISORIES OF PROCEDURAL CHANGES AFFECTING THE CMC AND ADR PRACTICES.**
**(www.yolo.courts.ca.gov)**

ADR Info Sheet
Rev. 03-2007

EXHIBIT 2

EXHIBIT 2

EXHIBIT 2

EXHIBIT 2

1 | DAVID F. FAUSTMAN, State Bar No. 081862
2 | TYREEN G. TORNER, State Bar No. 249980
   | FOX ROTHSCHILD LLP
3 | 235 Pine Street, Suite 1500
   | San Francisco, CA 94104-2734
4 | Telephone:     415.364.5540
   | Facsimile:     415.391.4436
5 | Email:     dfaustman@foxrothschild.com
   |           ttorner@foxrothschild.com

6 | Attorneys for Defendant
7 | INTERMETRO INDUSTRIES CORPORATION

F I L E D
YOLO SUPERIOR COURT

JUL 2 9 2013

By   L. PINELLI
        Deputy

**Filed by Fax**

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                              FOR THE COUNTY OF YOLO

11 | JIM LOCKHART,                           | Case No.: CV-13-0001117
12 |               Plaintiff,                | **DEFENDANT'S ANSWER TO**
    |                                        | **PLAINTIFF'S COMPLAINT FOR**
13 |        v.                               | **DAMAGES**
14 | INTERMETRO INDUSTRIES
    | CORPORATION and DOES 1 through 5,
15 | inclusive,
    |                                        | Complaint Filed:     June 24, 2013
16 |               Defendant.

1  Defendant INTERMETRO INDUSTRIES CORPORATION ("Defendant") answers the

2  Complaint for Damages ("Complaint") of Plaintiff JIM LOCKHART ("Plaintiff") as follows:

3  **GENERAL DENIAL**

4  Pursuant to California Code of Civil Procedure section 431.30, subdivision (d), Defendant

5  generally denies each and every allegation in the Complaint.  Defendant further denies that Plaintiff

6  has suffered any injury, damage, or loss by reason of any act or omission on the part of Defendant,

7  deny that Plaintiff has been damaged in any amount whatsoever, and deny that Defendant owes

8  Plaintiff any amount whatsoever.

9  **AFFIRMATIVE DEFENSES**

10  Without admitting any facts alleged by Plaintiff, Defendant also pleads the following

11  separate and affirmative defenses to the Complaint:

12  **FIRST AFFIRMATIVE DEFENSE**

13  **(Failure to State a Claim)**

14  Neither the Complaint nor any cause of action set forth in the Complaint states a cause of

15  action against Defendant or facts sufficient to constitute a cause of action against Defendant.

16  **SECOND AFFIRMATIVE DEFENSE**

17  **(Statute of Limitations)**

18  Plaintiff's claims are barred in whole or in part by the applicable statutes of limitation,

19  including but not limited to those set forth in the provisions of California Code of Civil Procedure

20  sections 335.1, 337, 338, 339 and 343, the California Labor Code, and any other applicable statute

21  of limitation.

22  **THIRD AFFIRMATIVE DEFENSE**

23  **(Failure to Mitigate)**

24  Plaintiff's claims are barred, in whole or in part, or the relief under such claims is limited, by

25  Plaintiff's failure to mitigate Plaintiff's damages, if any, as required by law.

26  **FOURTH AFFIRMATIVE DEFENSE**

27  **(After-Acquired Evidence)**

28  Plaintiff's claims are barred in whole or in part by the doctrine of after-acquired evidence.

1

## FIFTH AFFIRMATIVE DEFENSE

2

### (Estoppel)

3   Plaintiff's claims are barred in whole or in part because Plaintiff, by reason of Plaintiff's

4   conduct and actions, is estopped from asserting the claims set forth in the Complaint.

5

## SIXTH AFFIRMATIVE DEFENSE

6

### (Unclean Hands)

7   Plaintiff's claims are barred in whole or in part by the equitable doctrine of unclean hands.

8

## SEVENTH AFFIRMATIVE DEFENSE

9

### (Waiver)

10   Plaintiff's claims are barred in whole or in part because Plaintiff, by reason of Plaintiff's

11   conduct and actions, has waived the right if any to pursue the claims set forth in the Complaint.

12

## EIGHTH AFFIRMATIVE DEFENSE

13

### (Failure to State a Claim for Attorneys' Fees)

14   The Complaint fails to state a claim upon which an award of attorneys' fees can be granted.

15

## NINTH AFFIRMATIVE DEFENSE

16

### (Punitive Damages Unconstitutional)

17   Any claim for punitive damages is unconstitutional under the California and Federal

18   Constitutions and in particular pursuant to the due process, equal protection and/or excessive fines

19   clauses contained therein.

20

## TENTH AFFIRMATIVE DEFENSE

21

### (Workers' Compensation Act Exclusivity)

22   Plaintiff's claims, to the extent they are based in whole or in part upon any alleged physical

23   or emotional injury or distress, are barred by the exclusive remedy provisions of the California

24   Workers' Compensation Act, California Labor Code section 3600, et seq.

25

## ELEVENTH AFFIRMATIVE DEFENSE

26

### (Failure to State Claim to Support Punitive Damages)

27   Plaintiff is not entitled to recover any punitive or exemplary damages and any allegations

28   with respect thereto should be stricken because:

1    (a)    Plaintiff has failed to plead facts sufficient to support allegations of oppression, fraud,

2  and/or malice;

3    (b)    Plaintiff has failed to plead facts sufficient to support allegations of gross or reckless

4  disregard for the rights of Plaintiff or that Defendant was motivated by evil motive or intent; and

5    (c)    Neither Defendant nor any of its officers, directors or managing agents committed

6  any alleged oppressive, fraudulent or malicious act, authorized or ratified such an act, or had

7  advance knowledge of the unfitness, if any, if any employee or employees who allegedly committed

8  such an act, or employed any such employee or employees with a conscious disregard of the rights

9  or safety of others.

10  **TWELFTH AFFIRMATIVE DEFENSE**

11  **(Actions Not in Control of Defendant)**

12  Defendant, denying any wrongdoing on its part, and expressly denying that Plaintiff has been

13  damaged as alleged, asserts that any damage or pecuniary loss Plaintiff has sustained has been

14  proximately caused by Plaintiff's own actions or inactions.

15  **THIRTEENTH AFFIRMATIVE DEFENSE**

16  **(No Basis for Penalties)**

17  There is no basis alleged in the Complaint or any of its stated causes of action for the

18  imposition of penalties upon Defendant.

19  **FOURTEENTH AFFIRMATIVE DEFENSE**

20  **(Good Faith Dispute)**

21  A good faith dispute exists as to whether the claimed wages are due to Plaintiff; therefore,

22  Plaintiff is barred from recovering penalties against Defendant.

23  **FIFTEENTH AFFIRMATIVE DEFENSE**

24  **(Accord, Satisfaction and Release)**

25  Plaintiff's claims are barred by accord and satisfaction, release, and/or settlement.

26  **SIXTEENTH AFFIRMATIVE DEFENSE**

27  **(At-Will Employment Doctrine)**

28  Plaintiff's claims are barred, in whole or in part, by the "at-will" employment doctrine

ACTIVE 21723128v2 07/29/2013 8:56 AM                    4

1   codified in California Labor Code Section 2922.

2   ### SEVENTEENTH AFFIRMATIVE DEFENSE

3   #### (Conditions Precedent Not Fulfilled)

4   Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff failed to fulfill any

5   contractual conditions precedent.

6   ### EIGHTEENTH AFFIRMATIVE DEFENSE

7   #### (No Private Right of Action)

8   There does not exist a private right of action for the alleged Labor Code violations claimed

9   by Plaintiff in the Complaint.

10   ### RESERVATION OF RIGHTS

11   Defendant reserves the right to amend this Answer should it later discover the facts

12   demonstrating the existence of new and/or additional affirmative defenses and/or should a change in

13   the law support the inclusion of new and/or additional affirmative defenses.

14   WHEREFORE, Defendant prays:

15   1.   That Plaintiff take nothing by the Complaint;

16   2.   That the Complaint be dismissed with prejudice;

17   3.   That judgment be entered in Defendant's favor and against Plaintiff;

18   4.   That Defendant recovers its costs of suit herein, including reasonable attorneys' fees;

19   and

20   5.   This Court grant such other further relief as it may deem appropriate

21

22   Dated:   July 29, 2013                    FOX ROTHSCHILD LLP

23

24

25   By: _____

26   DAVID F. FAUSTMAN
     TYREEN G. TORNER
27   Attorneys for Defendant
     INTERMETRO INDUSTRIES CORPORATION

28

1        **PROOF OF SERVICE**

2           I am employed in the County of San Francisco, State of California.  I am over the age of 18
years and not a party to this action; my business address is:  235 Pine Street, Suite 1500, San
3        Francisco, CA 94104-2734.

4           On July 29, 2013, I served the foregoing documents:

5        **DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT FOR DAMAGES**

6        on the interested party(ies) in this action by placing true copies thereof enclosed in sealed
envelope(s) addressed as follows:
7
         Robert P. Henk, Esq.
8        Sheri L. Leonard, Esq.
         HenkLeonard
9        A Professional Corporation
         22260 Douglas Blvd., Suite 200
10       Roseville, CA 95661

11
         ☑   **BY FIRST-CLASS MAIL:**  I caused said document(s) to be deposited in a facility
12           regularly maintained by the United States Postal Service on the same day, in a sealed
             envelope, with postage paid, addressed to the above listed person(s) on whom it is being
13           served for collection and mailing on that date following ordinary business practices.

14       ☐   **BY HAND DELIVERY/PERSONAL SERVICE:**  I caused said documents(s) to be
             personally delivered by a courier to each addressee
15
         ☐   **BY FACSIMILE:**  I caused such document(s) to be faxed to the office of the addressee(s)
16           to the facsimile number(s) above.

17       ☐   **BY ELECTRONIC TRANSMISSION:**  I caused such document(s) to be emailed to the
             email address of the addressee (s) above.
18
         ☐   **BY OVERNIGHT MAIL:**  I caused said document(s) to be deposited in a facility
19           regularly maintained by the Overnight Mail service provider on the same day, in a sealed
             envelope, with fees and postage paid, addressed to the above listed person(s) on whom it is
20           being served.

21
         ☑   **[STATE]**  I declare under penalty of perjury under the laws of the State of California
22           that the foregoing is true and correct.

23

24
            Executed July 29, 2013 at San Francisco, California.
25

26                                             *Elisabeth Paulsen*
                                               _____
27                                             Elisabeth M. Paulsen

28

DEFENDANT'S ANSWER TO COMPLAINT        Case No. CV-13-0001117

# EXHIBIT 3

# EXHIBIT 3

# EXHIBIT 3

# EXHIBIT 3

 LexisNexis®

FOCUS - 1 of 2 DOCUMENTS

Copyright 2008 LexisNexis, Division of Reed Elsevier Inc.
LexisNexis Jury Verdicts and Settlements Report

*2008 Mealey's CA Jury Verdicts & Settlements 123*

**HEADLINE:** California Jury Issues $992,650 Verdict In Case Where Employee Alleged He Was Verbally Abused

**Case Name:** Gurpreet Singh v. Southland Stone U.S.A. Inc., et al.

**Case Number:** BC350196

**Court:** Calif. Super., Los Angeles Co.

**Judge:** Mary Thornton

**Verdict/Settlement (breakdown):** $992,650 plaintiff verdict ($253,750 for the intentional infliction of emotional distress claim, $337,100 for the intentional misrepresentation claim, $45,000 for breach of implied covenant of good faith and fair dealing, $6,800 for nonpayment of wages and $350,000 in punitive damages)

**Plaintiff(s):** Gurpreet Singh

**Defendant(s):** Southland Stone U.S.A. Inc.

**Date:** April 16, 2008

**Claim:** Breach of written contract, breach of the covenant of good faith and fair dealing, promissory fraud, wrongful termination, intentional infliction of emotional distress and promissory estoppel

**Defense:** Singh voluntarily resigned from the position; Singh was employed under an "at-will' agreement; there was ample cause shown by Singh's lack of performance and violations of company policies.

**Background:** Gurpreet Singh worked for Southland Stone U.S.A. Inc. as a general manager.Singh said that before he was hired, he was a resident of New Delhi, India, and worked for a different company.  Singh said he was approached by a Southland representative, who solicited him to join Southland.  Singh said the representative promised that Southland would sponsor his and his family's immigration to the United States, would pay an annual salary of $120,000 and would provide health benefits and paid vacation time.However, Singh said, once he began to work for Southland, he was verbally abused.  He said that four months after he began to work for the company, he received a 50 percent pay cut.  Singh said he was not provided with any explanation for the pay cut.  As a result of the sudden and unexpected pay cut, Singh said he had to move his wife and children back to India.Singh said that based on increasingly hostile circumstances that included verbal abuse, he was forced to resign.Singh filed an amended complaint against Southland on April 25, 2007, in the Los Angeles Superior Court.

**Other:** The case went to a jury trial on Jan. 30, 2008, before Judge Mary Thornton.The jury found that Southland was exercising its legal rights but that its conduct was not lawful and consistent with community standards.  The jury also found that Southland's conduct was outrageous and that it knowingly acted with disregard of the probability that Singh would suffer from emotional distress.  The jury further found that Singh suffered from severe emotional distress and that Southland's conduct was a substantial factor in causing the emotional distress.Additionally, the jury found that

LexisNexis Jury Verdicts and Settlements Report (2008)

Southland knowingly made false representations of an important fact to Singh and that it intended Singh to rely on the misrepresentation. The jury also found that Singh's reliance was a substantial factor on causing him harm. The jury also found in favor of Singh on the concealment claim. However, the jury found that Singh was not entitled to damages for this claim. The jury found in favor of Singh on the breach of implied covenant of good faith and fair dealing claim.

**Plaintiff Attorneys:** Okorie Okorocha and Krishna R. Malhotra, Malhotra & Malhotra, Los Angeles

**Defense Attorneys:** Hitendra Bhakta, Law Offices of Norman A. Filer, Orange, Calif.

**Key Related Documents:** Judgment on the verdict available. Document #99-080504-004R.
Jury instructions available. Document #99-080504-005J.
Defendant's statement of the case available. Document #99-080504-006B.
Complaint available. Document #99-080504-007C.

Contact Mealey's at 1-800-MEALEYS and see today's headlines at www.lexis.com/legalnews. To see if there is a Mealey's conference on this topic or an online CLE session, please visit: http://www.mealeys.com/conferences.html.

**LOAD-DATE:** 5/20/2008

# EXHIBIT 4

# EXHIBIT 4

# EXHIBIT 4

# EXHIBIT 4

 LexisNexis®

FOCUS - 4 of 4 DOCUMENTS

Copyright 2006 LexisNexis, Division of Reed Elsevier Inc.
LexisNexis Jury Verdicts and Settlements Report

*2006 Mealey's CA Jury Verdicts & Settlements 3052*

**HEADLINE:** Jury Awards California Man $3.64 Million In Wrongful Termination Suit Against City Of South Gate

**Case Name:** Mark Van Holt v. City of South Gate

**Case Number:** BC309741

**Court:** Calif. Super., Los Angeles Co.

**Judge:** Victor E. Chavez

**Verdict/Settlement (breakdown):** $3,647,400 plaintiff verdict

**Plaintiff(s):** Mark Van Holt

**Defendant(s):** City of South Gate, Calif.

**Date:** March 27, 2006

**Claim:** Wrongful discharge, retaliation, violation of the Peace Officers Procedure Bill of Rights, breach of contract, breach of implied covenant of good faith and fair dealing

**Defense:** Liability denied.

**Background:** Mark Van Holt was hired by the City of South Gate, Calif., as deputy chief of police, entering into a standard form of employment agreement with the city on April 22, 2002. This agreement was modified on Sept. 18, 2002, and, among other things, stated that his employment term was to last through Sept. 18, 2007. Part of Van Holt's job responsibilities included investigating misconduct by South Gate police officers. During his tenure, Van Holt discovered wrongdoing by some of the South Gate police officers and subsequently reported their actions to the Los Angeles County Sheriff's Department, the inspector general for the City of South Gate and the attorney general for the State of California. An investigation into Van Holt's finding ensued. Van Holt alleged that following his reports of misconduct, he was subjected to a hostile work environment and retaliation. He claimed that the city launched an internal affairs investigation against him on pretenses as an attempt to prevent him from completing the investigations. Van Holt further alleged that he was then wrongfully terminated from his position as a continued means of retaliation for his investigation. Van Holt sued the City of South Gate in the Los Angeles County Superior Court on Jan. 28, 2004, seeking damages for wrongful discharge, retaliation, violation of the Peace Officers Procedure Bill of Rights, breach of contract and breach of implied covenant of good faith and fair dealing.

**Other:** A jury returned a verdict against the city on March 27, 2006, awarding Van Holt $4,216,505. The jury concluded that the city wrongfully discharged Van Holt and awarded him $2,247,400 in past and future losses. The jury also ruled in favor Van Holt's retaliation claim. The jury decided that the city violated the Peace Officers Procedural Bill of Rights by subjecting Van Holt to any punitive or disciplinary action, awarding him $900,000 in damages. The jurors also concluded that the city breached its contract with Van Holt, awarding him another $569,105. Additionally, the jury found

LexisNexis Jury Verdicts and Settlements Report (2006)

that the city prevented Van Holt from receiving benefits, he was entitled to under the employment agreement and that the city failed to act fairly and in good faith toward him, awarding him $500,000 in damages. Post-trial, Van Holt accepted the court's remittitur of $569,105, issued June 5, 2006, and judgment of $3,647,400, entered March 8, 2006.

**Plaintiff Attorneys:** Bradley C. Gage, Terry M. Goldberg and Marla A. Brown, Law Offices of Goldberg & Gage, Woodland Hills, Calif.; Christopher Brizzolara, Santa Monica, Calif.

**Defense Attorneys:** Edward Zappia, Jared L. Bryan, Jackson Lewis, Los Angeles

**Key Related Documents:** Proposed amended judgment on verdict, with verdict form, available. Document #99-070619-031R.
 Plaintiff's opposition to defendant's motion for judgment notwithstanding the verdict available. Document #99-070619-030B.
 Defendant's reply to opposition of JNOV available. Document #99-070619-029B.
 Defendant's reply to opposition to its motion for a new trial available. Document #99-070619-028B.
 Complaint available. Document #99-070619-027C.

Contact Mealey's at 1-800-MEALEYS and see today's headlines at www.lexis.com/legalnews. To see if there is a Mealey's conference on this topic or an online CLE session, please visit: http://www.mealeys.com/conferences.html.

**LOAD-DATE:** 7/16/2007